**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **BYRON MARTINEZ PEREZ AND NESTOR SANCHEZ GUEVARRA,** | * | |
| | * | |
| Plaintiffs, | | |
| v. | * | **Case No.: GJH-18-3348** |
| **CRYSTAL HNI CHENG,** | * | |
| Defendant. | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiffs Byron Martinez Perez ("Martinez Perez") and Nestor Sanchez Guevarra ("Sanchez Guevarra") allege that Defendant Crystal Hni Cheng ("Defendant") violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law (MWHL), Md. Code Ann., Lab & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law (MWPCL), Md. Code Ann., Lab & Empl. §§ 3-501 *et seq.*, by underpaying Plaintiffs when they worked at her restaurant, House of Fortune. ECF No. 1. Pending before the Court is Plaintiffs' Motion for Default Judgment. ECF No. 8. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the following reasons, Plaintiffs' motion will be granted in part and denied in part.

**I.   BACKGROUND¹**

Plaintiffs are residents of Montgomery County, Maryland. ECF No. 1 ¶¶ 5–6. Defendant is a resident of Maryland who exercises exclusive control over the operations of the

---

¹ Unless otherwise stated, these background facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true.

1

Germantown, Maryland restaurant House of Fortune, which she operates without use of a corporate form. *Id.* ¶¶ 7–8. Plaintiff Sanchez Guevarra worked at House of Fortune as a "kitchen hand" from May 1, 2015 to July 31, 2016. *Id.* ¶¶ 10–11. Plaintiff Martinez Perez worked in the same role from February 20, 2017 to August 16, 2018. *Id.* Plaintiffs' duties consisted of preparing food, packing food orders, handling deliveries, washing dishes, and cleaning. *Id.* ¶ 12. Plaintiffs typically worked 6 days per week, which entailed 67.0 hours per week for Plaintiff Sanchez Guevarra and 66.0 hours per week for Plaintiff Martinez Perez. *Id.* ¶¶ 13–15.

Throughout their employment by Defendant, Defendant paid Plaintiffs on a semimonthly basis. *Id.* ¶ 15. Defendant paid Plaintiff Sanchez Guevarra a semimonthly salary of $900.00 from October 1, 2015 to March 31, 2016 and $1,000.00 from April 1, 2016 to July 1, 2016. *Id.* ¶ 18.[2] Plaintiff Martinez Perez's semimonthly salary was $1,000 from February 20, 2017 to July 31, 2017; $1,100 from August 1, 2017 to January 31, 2018; $1,125 from February 1, 2018 to July 31, 2018; and $1,150 from August 1, 2018 to August 16, 2018. *Id.* ¶ 17. Defendant paid Plaintiffs exclusively in cash. *Id.* ¶ 19. Defendant did not pay Plaintiffs overtime wages. *Id.* ¶ 22.

In her role as the operator of House of Fortune, Defendant personally hired Plaintiffs, set their schedules and rates of compensation, and tendered their pay. *Id.* ¶¶ 26–29. Defendant held the power to hire and fire Plaintiffs, to control their work schedules, to supervise and control their work, and to set their rate and manner of pay. *Id.* ¶¶ 30–33. Though Defendant was aware that she was legally required to pay Plaintiffs one and one-half times their regular rate for hours worked in excess of 40 hours in any one workweek, she did not pay Plaintiffs overtime wages. *Id.* ¶ 22, 34. Defendant also was aware that she was legally required to pay Plaintiffs the applicable minimum wage, but nonetheless failed to do so. *Id.* ¶¶ 23, 35.

---

[2] Though Plaintiff Sanchez Guevarra was employed beginning in May 2015, he only seeks damages for the three years preceding the filing of his complaint on October 30, 2018. ECF No. 1 ¶ 25.

From October 1, 2015 to June 30, 2016, the Montgomery County, Maryland minimum wage was $9.55 per hour; it increased to $10.75 per hour on July 1, 2016, to $11.50 per hour on July 1, 2017, and $12.00 per hour on July 1, 2018. *Id.* ¶ 37.[3] However, Defendant paid Plaintiff Sanchez Guevarra effective hourly rates of $6.20 from October 1, 2015 until March 31, 2016 and $6.89 from April 1, 2016 until July 1, 2016. *Id.* ¶ 18. Defendant paid Plaintiff Martinez Perez effective hourly rates of $6.99 from February 20, 2017 until July 31, 2017, $7.69 from August 1, 2017 until January 31, 2018, $7.87 from February 1, 2018 until July 31, 2018, and $8.14 from August 1, 2016 until August 16, 2018. *Id.* ¶ 17.

Plaintiffs filed this action against Defendant on October 30, 2018 to recover damages under the FLSA, the MWHL, and the MWPCL. ECF No. 1. On October 31, 2018, Plaintiff served Defendant with process. ECF No. 3. Defendant failed to file an answer or responsive pleading to Plaintiffs' Complaint. On November 27, 2018, pursuant to Federal Rule of Civil Procedure 55(a), Plaintiffs filed a motion for entry of default by the Clerk of the Court. ECF No. 4. The Clerk entered an Order of Default on January 2, 2019. ECF No. 5. Plaintiff then filed the pending Motion for Default Judgment on May 3, 2019. ECF No. 8.

**II. DISCUSSION**

In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the Complaint as to liability, but nevertheless "must determine 'whether

---

[3] Plaintiffs cited to Section 27-68 of the Montgomery County Code for these minimum wage figures. The current version of that provision does not contain the minimum wages for years before 2018. Montgomery County Code § 27-68 (2019). Acts enacted by the Montgomery County Council, however, confirm the rates for the years at issue here. *See* Montgomery County, Md., Bill No. 59-14 (Mar. 3, 2015), https://www.montgomerycountymd.gov/COUNCIL/Resources/Files/bill/2014/20150303_59-14A.pdf; Montgomery County, Md., Bill No. 28-17 (Nov. 7, 2017), https://www.montgomerycountymd.gov/council/resources/files/lims/bill/2017/Signed/pdf/3359_1454_Signed_1115 2017.pdf. Department of Labor regulations provide that where state or local law requires payment of a minimum wage higher than the federal minimum wage, the FLSA should not "be taken to override or nullify the provisions of these laws." 29 C.F.R. ¶ 778.5.

3

[those] allegations . . . support the relief sought in th[e] action.'" *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685 (D. Md. 2013) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). "A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *Choice Hotels Int'l, Inc. v. Savannah Shakti Corp.*, No. DKC-11-0438, 2011 WL 5118328, at *2 (D. Md. Oct. 25, 2011) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)).

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422; *see also Ryan*, 253 F.3d at 780 (noting that "[t]he defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact," which provide the basis for judgment). Upon a finding of liability, "[t]he court must make an independent determination regarding damages . . . ." *Int'l Painters & Allied Trades Indus. Pension Fund*, 919 F. Supp. 2d at 684. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." While the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "affidavits or documentary evidence in the record to determine the appropriate sum." *Int'l Painters & Allied Trades Indus. Pension Fund*, 919 F. Supp. 2d at 684 (citing *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010)).

The FLSA requires that employers pay nonexempt employees at least the federal minimum wage for all hours worked and overtime pay for hours worked beyond forty hours per week. 29 U.S.C. §§ 206, 207. "The MWHL similarly requires that employers pay the applicable minimum wage" and "that they pay an overtime wage of at least 1.5 times the usual hourly wage for each hour worked in excess of forty hours per week." *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 275–76 (D. Md. 2014) (quoting *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 412 (D. Md. 2013)).

The MWHL is "'the State parallel' to the FLSA." *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) (quoting *Friolo v. Frankel*, 819 A.2d 354, 361 (Md. 2003)). "The requirements under the MWHL mirror those of the federal law; as such, Plaintiffs' claim under the MWHL stands or falls on the success of their claim under the FLSA." *Turner v. Human Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003). Finally, the MWPCL "requires an employer to pay its employees regularly while employed, and in full at the termination of employment." *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 625 (Md. 2014) (citing Md. Code Ann., Lab. & Empl. §§ 3-502, 3-505). Both the MWHL and the MWPCL "are vehicles for recovering overtime wages." *Id.* at 625–26.

In addition to unpaid wages, Plaintiffs here request liquidated damages under the FLSA and MWHL. ECF No. 1 ¶¶ 49, 57. There is a presumption in favor of awarding liquidated damages when it is determined that an employer violated the FLSA and MWHL. *Rogers v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624, 637–38 (D. Md. 2005) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707–08 (1945)); *Lanza v. Sugarland Run Homeowners Ass'n, Inc.*, 97 F. Supp. 2d 737, 739 n.9 (E.D. Va. 2000); Md. Code Ann., Lab. & Empl., § 3-427(d). Specifically, unless an employer who fails to pay wages required by the two statutes can demonstrate that it

acted in good faith and had reasonable grounds for believing it paid its employee all wages legally owed, the employer is liable to the employee for liquidated damages in an amount equal to the unpaid wages. *See Rogers*, 362 F. Supp. 2d at 638; *see also* 29 U.S.C. §§ 216(b), 260; Md. Code Ann., Lab. & Empl., § 3-427(d). The employer bears the "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Rogers*, 362 F. Supp. 2d at 638 (quoting *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960)).

"[A]n employee's statement under oath 'as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed,' and if the employer does not successfully rebut the employee's statement, '[t]he Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate.'" *Calderon Recinos v. JMZ Constr., LLC*, Civil Action No. DKC 15-0406, 2016 WL 3162820, at *3 (D. Md. June 7, 2016) (quoting *Lopez v. Lawns 'R' Us*, Civil No. DKC-07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008)).

Plaintiff Sanchez Guevarra submitted an affidavit testifying to the Complaint's allegations about his pay. ECF No. 8-2. The affidavit declares that he typically worked 6 days per week, totaling 67 hours each week, and that Defendant paid him the same rate across all hours, including his overtime hours. *Id.* ¶¶ 6–9, 11. Specifically, Defendant paid him $900.00 semimonthly from October 1, 2015 until March 31, 2016, and $1,000.00 semimonthly from April 1, 2016 until July 31, 2016. *Id.* ¶ 10. Multiplying those amounts by 0.4615, a figure that a U.S. Department of Labor reference form cited by Plaintiffs provides for calculating weekly pay

from semimonthly salaries, ECF No. 8-4, produces weekly salaries of $415.35 and $461.50 for those periods, respectively.[4]

Dividing those weekly salaries by the number of hours worked, as Plaintiffs have done in an additional submission, ECF No. 8-3 at 2, produces effective hourly rates of $6.20 and $6.89 for those periods. However, as stated above, the Montgomery County minimum wage was $9.55 per hour from October 1, 2015 through June 30, 2016, and $10.75 per hour from July 1, 2016 through the end of Plaintiff Sanchez Guevarra's employment with Defendant on July 31, 2016. Therefore, subtracting Plaintiff's regular, non-overtime hourly rate from the Montgomery County minimum wage, Defendant underpaid Plaintiff Sanchez Guevarra by $3.35 per hour from October 1, 2015 through March 31, 2016 when his semimonthly salary was raised, by $2.66 per hour from that time until the minimum wage was raised on July 1, 2016, and by $3.86 per hour from that time until the end of his employment. Defendant has not rebutted the facts alleged in the Complaint and substantiated in Plaintiff Sanchez Guevarra's affidavit. Therefore, because of Defendant's failure to pay him required minimum and overtime wages, Defendant owes Plaintiff Sanchez Guevarra unpaid wages in the amount of $13,835.65, calculated as follows:

---

[4] The Court takes judicial notice of the Department of Labor reference form under Federal Rule of Evidence 201(b).

|  | Weeks Worked | Hours/Week | Over-time (OT) Hours/Week | Weekly Pay | Effective Rate/Hour (vs. Actual Minimum Wage) | Proper Weekly Pay at Min. Wage | Proper Weekly Pay at OT Rate | Unpaid Wages Owed Per Week | Total Unpaid Wages |
|---|---|---|---|---|---|---|---|---|---|
| 10/26/15 - 4/3/16 | 23 | 67 | 27 | $415.35 | $6.20 (vs. $9.55) | $382.00 | $386.78 | $353.43 | $8,128.89 |
| 4/4/16 - 6/26/16 | 12 | 67 | 27 | $461.50 | $6.89 (vs. $9.55) | $382.00 | $386.78 | $307.28 | $3,687.36 |
| 6/27/16 - 7/31/16 | 5 | 67 | 27 | $461.50 | $6.89 (vs. $10.75) | $430.00 | $435.38 | $403.88 | $2,019.40 |
|  |  |  |  |  |  |  |  | **Total Unpaid Wages** | **$13,835.65**[5] |

Plaintiff Martinez Perez submitted an affidavit similar to Plaintiff Sanchez Guevarra's that testifies to the allegations of underpayment in his complaint. ECF No. 8-1. Plaintiff Martinez Perez testifies that he typically worked 6 days per week, totaling 66 hours each week, and that Defendant paid him the same rate across all hours, including his overtime hours. *Id.* ¶¶ 7–8, 11. Specifically, Defendant paid him $1000.00 semimonthly from February 20, 2017 until July 31, 2017, $1,100.00 semimonthly from August 1, 2017 until January 31, 2018, $1,125.00 from February 1, 2018 to July 31, 2018, and $1,150.00 from August 1, 2018 to August 16, 2018, when his employment ended. *Id.* ¶ 10. Applying to those semimonthly salaries the 0.4615 coefficient from the Wage and Hour Division's reference form, ECF No. 8-4, produces weekly salaries of $461.50, $507.65, $519.19, and $530.73 for these periods, respectively.

Dividing those weekly salaries by the number of hours worked, as reflected in Plaintiffs' tabulation, ECF No. 8-3 at 2, produces effective hourly rates of $6.99, $7.69, $7.87, and $8.04 for these periods. Plaintiff Martinez Perez was therefore paid below Montgomery County minimum wage during each period, with the exception of his final week, during which he only

---

[5] Plaintiffs request $13,835.45, an apparent de minimis miscalculation of the final total. ECF No. 8-3 at 2.

worked 31.5 hours but was still paid consistent with his normal rate, producing an effective wage of $16.85. *See* ECF No. 8 at 4 n.10; ECF No. 8-3 at 2.[6] Defendant has not rebutted the facts alleged in the Complaint and substantiated in Plaintiff Martinez Perez's affidavit. Therefore, because of Defendant's failure to pay him required minimum and overtime wages, Defendant owes Plaintiff Martinez Perez unpaid wages in the amount of $30,703.49, calculated as follows:

|  | Weeks Worked | Hours/ Week | Over-time (OT) Hours/ Week | Weekly Pay | Effective Rate/Hour (vs. Actual Minimum Wage) | Proper Weekly Pay at Min. Wage | Proper Weekly Pay at OT Rate | Unpaid Wages Owed Per Week | Total Unpaid Wages |
|---|---|---|---|---|---|---|---|---|---|
| 2/20/17 - 7/2/17 | 19 | 66 | 26 | $461.50 | $6.99 (vs. $10.75) | $430.00 | $419.25 | $387.75 | $7,367.25 |
| 7/3/17 - 7/30/17 | 4 | 66 | 26 | $461.50 | $6.99 (vs. $11.50) | $460.00 | $448.50 | $447.50 | $1,790.00 |
| 7/31/17 - 1/28/18 | 26 | 66 | 26 | $507.65 | $7.69 (vs. $11.50) | $460.00 | $448.50 | $400.85 | $10,422.10 |
| 1/29/18 - 7/1/18 | 22 | 66 | 26 | $519.19 | $7.87 (vs. $11.50) | $460.00 | $448.50 | $389.31 | $8,564.82 |
| 7/2/18 - 8/5/18 | 5 | 66 | 26 | $519.19 | $7.87 (vs. $12.00) | $480.00 | $468.00 | $428.81 | $2,144.05 |
| 8/6/18 - 8/12/18 | 1 | 66 | 26 | $530.73 | $8.04 (vs. $12.00) | $480.00 | $468.00 | $417.27 | $417.27 |
| 8/13/18 - 8/19/18 | 1 | 31.5 | - | $530.73 | $16.85 (vs. $12.00) | $480.00 | $468.00 | $0 | $0 |
|  |  |  |  |  |  |  |  | **Total Unpaid Wages** | **$30,703.49**[7] |

---

[6] Plaintiffs made this clarification in their Motion for Default Judgment and included it in their wage tabulation; the Complaint requested damages for Plaintiff Martinez Perez's final week, but the Motion for Default Judgment does not. Because the damages requested in the motion are less than those sought in the Complaint, this change is permissible under Federal Rule of Civil Procedure 54(c) ("A default judgment must not differ in kind from, or *exceed* in amount, what is demanded in the pleadings" (emphasis added)).

[7] Plaintiffs request $30,703.56, an apparent de minimis miscalculation of the final total. ECF No. 8-3 at 1.

Given that Defendant has not filed a responsive pleading, she has not met her burden to show that she acted in good faith or had reasonable grounds for believing she paid Plaintiffs the wages to which they were entitled. *See Wright*, 275 F.2d at 449 (a "delinquent employer" bears "the plain and substantial burden of persuading the court by proof that [its] failure to obey the statute was both in good faith and predicated upon . . . reasonable grounds"). Thus, Plaintiffs are entitled to at least liquidated damages under the FLSA in an amount equal to their unpaid wages.

Plaintiffs further seek treble damages under the MWPCL. ECF No. 8 at 4–5. Employees seeking enhanced damages are "entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both." *Quiroz v. Wilhelp Commercial Builders, Inc.*, No. WGC-10-2016, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011). The MWPCL states that if "a court finds that an employer withheld the wage of an employee in violation of" the statute and "not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." Md. Code Ann., Lab. & Empl. § 3-507.2(b). A bona fide dispute is "a legitimate dispute over the validity of the claim or the amount that is owing" such that the employer had a good faith basis for withholding payment. *Admiral Mortg., Inc. v. Cooper*, 745 A.2d 1026, 1031 (Md. 2000). The employer has the burden to prove a bona fide dispute. *Peters,* 97 A.3d at 627–28.

Nonetheless, "an employee is not presumptively entitled to enhanced damages, even if the court finds that wages were withheld without a bona fide dispute." *Id.* at 630. "Enhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification." *Villatoro v. CTS & Assocs., Inc.*, Civil Action No. DKC 14-1978, 2016

WL 2348003, at *3 (D. Md. May 4, 2016) (quoting *Clancy v. Skyline Grill, LLC*, Civil Action No. ELH-12-1598, 2012 WL 5409733, at *8 (D. Md. Nov. 5, 2012)).

Thus, it is customary in this District to award double damages under the FLSA, but not treble damages under the MWPCL, when a defendant fails to offer any evidence of a bona fide dispute, making liquidated damages appropriate, but plaintiffs fail to offer any evidence that they suffered consequential damages from the underpayments. *Villatoro*, 2016 WL 2348003, at *3 (citing *Clancy*, 2012 WL 5409733, at *8). Here, Defendant has not responded and has failed to offer any evidence that there was a bona fide dispute or that she held a good faith but mistaken belief about Plaintiffs' right to payment. But Plaintiffs have offered no evidence that they suffered consequential damages from the underpayments. The Complaint and affidavits supporting the Motion for Default Judgment are devoid of any facts at all about the impact on Plaintiffs of Defendants' violations. Accordingly, the Court will award liquidated damages under the FLSA, but not treble damages under the MWPCL.

Plaintiffs also request an award of $7,275.00 in attorneys' fees and costs. ECF No. 1 at 8; ECF No. 8 at 2, 5–6. An award of reasonable fees and costs is proper under both the FLSA, 29 U.S.C. § 216(b), and the MWHL, Md. Code Ann., Lab. & Empl. § 3-427(d)(iii). The amount of reasonable attorneys' fees is "within the sound discretion of the trial court," *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984), and is determined by "multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)).

Plaintiffs request $6,805.00 in attorneys' fees, which includes $1,225.00 for 3.5 hours of work at $350.00 per hour by attorney Justin Zelikovitz, $4,830.00 for 13.8 hours of work at $350.00 per hour by attorney Jonathan Tucker, and $750 for 5.0 hours at $150.00 per hour for

11

paralegals and support staff. ECF No. 8 at 6. In support of the request, Plaintiffs submit an affidavit from Zelikovitz, who declares that he has been admitted to practice law for 10 years and that Tucker has been admitted for 9 years. ECF No. 8-5 ¶¶ 3–4. Zelikovitz further attests to the hours of work for which Plaintiffs request fees and offers detail about the work performed. *Id.* ¶¶ 2–3. Specifically, Zelikovitz declares that the time includes 11.7 hours spent on client intake, case development, background investigation, and case administration, 2.7 hours on pleadings, 2.4 hours on motions practice, and 0.5 hours on the fee petition component of the motion for default judgment. *Id.* ¶ 2. Zelikovitz also declares that the firm's support staff expended 5.0 hours on case development, background investigation, and case administration work. *Id.* ¶ 5.

The Court finds that the attested number of expended hours is reasonable for this case. Further, the hourly rates are fair and commensurate with this District's Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, which state that a reasonable rate for lawyers admitted to the bar for nine to fourteen years is $225 to $350. *See* Loc. R. app. B (D. Md.). Based on the foregoing, the Court finds that Plaintiffs' counsel's request for attorneys' fees is reasonable. Thus, Plaintiffs will be awarded $6,805.00 in attorneys' fees. Zelikovitz's affidavit also attests to expenses of $400.00 in court filing fees and $70.00 in service costs. ECF No. 8-5 at 6. Thus, the Court will award Plaintiff $470.00 in costs.

**III.     CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Default Judgment, ECF No. 8, is granted in part and denied in part. Judgment will be entered for Plaintiffs in the amount of $89,078.28. Plaintiffs will also be awarded $6,805.00 in attorneys' fees and $470.00 in costs. A separate Order shall issue.


Date: <u>December 23, 2019</u>　　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge